Ruffin, Chief Justice,
 

 after stating the case as above, pro
 
 *80
 
 ceeded as follows: When this case was before the Court on ^le ^ea™§'> there was much reluctance felt to ordering an account. But as the answer admitted some dealings between t]le parties, of the kind stated in the bill, and the letter of Ferrand of the 5th of October, 1829, made it satisfactorily appear that an open account in respect of those dealings then subsisted between the parties, and contained a promise to settle it, we were obliged to put out df the plaintiff’s way the obstacle of the statute of limitations. Nevertheless, the circumstances under which this claim is preferred, renders its justice so extremely doubtful as to
 
 entitle it to no
 
 favour, and to impose on the plaintiff the burden of offering the clearest and most conclusive proof of every item, before he can be permitted to charge it against the defendant. The' length of time, indeed, is not such as to amount to a bar of itself; nor, as the account certainly remained unclosed as to something, can the length of time, connected with the other circumstances, authorise us wholly to deny the plaintiff the benefit of such evidence as does plainly establish the delivery of articles to the factor. But there is enough to render
 
 the
 
 Court jealous of the claim, and very cautious in not admitting any charge but upon evidence so clear, consistent and natural, as to amount to positive and almost conclusive proof Now, the receipts of the wagoners do not constitute evidence of that kind. It is not material that we should determine, in this case, whether those receipts are evidence between these parties, as acts done in the ordinary course of business by persons since dead; for, if they be competent, they can only raise a probability of the delivery; and
 
 their operation to
 
 that extent, is repelled by opposite probabilities that seem undeniable. The counsel for the plaintiff said, in the argument, that the inference from the receipts and deaths of the wagoners, at this period, was so fortified by the default of Ferrand in not rendering accounts, whereby the plaintiff could have seen whether the wagoners had or had not delivered their loads, that the Court ought to act on it and charge the goods, though it may not positively appear that they came to Ferrand’s possession. The argument adopted the statement of the bill in this particular, without adverting to the plaintiff’s letter of
 
 *81
 
 April, 1830, in which he asks for the “ remaining” account of sales; or to the document put in before the Master, whereby it appears that two accounts of sales were rendered. So far, therefore, from the fact, as actually existing, supporting the argument, it is opposed to it. The statement of the bill seems, indeed, to be incredible. That a merchant should sell goods to the value of nearly $1,000 to another person, and for three or four years afterwards forward to him large quantities of merchandize at different times, and take no security for the goods sold, nor get payment, nor get an acknowledgement for the consignments, nor any account of
 
 sales for more
 
 than ten years from the commencement of the transactions, is certainly possible. But it is so entirely against prudence and all experience, that a Court cannot act on the assumption of the truth of the story, without violating rational convictions to the contrary. There must have been divers statements between these parties; though probably, the more recent transactions remained open. At all events, it appears, probably without the design of the plaintiff, that some accounts were rendered — particularly, one in May, 1822, which was two years after the delivery of the furniture, on which only
 
 $701
 
 49 1-2 was due. This account, and all others that may have been stated, and all material correspondence after May, 1825, the plaintiff has withheld; as he has also the original invoices of the furniture, which he promises in the bill to produce as evidence that the-prices charged by him were but a moderate advance on the cost. Unfairness of this sort furnishes presumptions that these accounts contain facts that would be destructive of the claim, as that the prices charged by the plaintiff were immoderate; or those at which the factor sold were much reduced; or that the furniture had been included in the account of May, 1822; or other facts that would reduce the amount of the demand, by shewing payments or otherwise. If those accounts were thus rendered, they would include the articles to which the wagoner’s receipts relate, and therefore be better evidence than the receipts, inasmuch as the former would be direct to the point on which the latter would afford but a remote and circumstantial inference,
 
 *82
 
 These considerations lead us to believe, that in decreeing at a^ ^01’ we run some hazard of working wrong; but, at all events, we cannot give him a decree for any thing which he does not establish by unequivocal and unsuspected evidence. The plaintiff’s first and second exceptions, which relate to the merchandize, of the delivery of which the receipts of the wagoners are the only evidence, are over-ruled.
 

 The defendant’s first exception, that the Master has charged the furniture as an item in his account, must be over-ruled. The use of the furniture by Ferrand is proved by the witnesses, and also the selling price in this State, of such furniture. As an isolated transaction, the sale of the furniture would not make a case for the jurisdiction of this Court; and moreover, all remedy in respect of it would have been barred by the statute of limitation. But that part of the dealings necessarily formed but an item in account, when the parties proceeded in their other dealings; and, therefore, the letter of Ferrand repelled the effect of lapse of time as to this, as well as the other parts of this demand.
 

 But if the plantiff, by connecting together those transactions of sale and agency, avoids the operation of the statute of limitation as to the articles sold, he must submit to the consequences of that connexion, by not claiming interest on that part of the account, unless he be entitled to claim it on the transactions between the parties as principal and factor. That this plaintiff ought not to have such interest, the Court deems clear from the circumstances to which we have already adverted. He keeps back the accounts rendered by the factor. He was as much to blame as the factor in not closing the dealings before such long delay had occurred. Upon the failure of the factor to settle, the plaintiff neglected to bring suit until the factor’s death, and very nearly three years from the last letter of the factor. The truth is, that it must be supposed the first payments were meant to be on account of the furniture, as it appears that the payments exceed the value of the other merchandize and the plaintiff would not have trusted a person with'his goods as agent, who neglected for more than five years to pay any thing on his own purchases. The balance of principal, money due on this account is therefore
 
 *83
 
 probably for the proceeds of the goods sold for the plaintiff, and under the circumstances of laches and unfairness on the part of the plaintiff in not producing the invoices to shewthe cost, and of want of diligence on the part of Ferrand, our opinion is that interest ought to be computed on that balance from suit brought, but not before. Wherefore, the defendant’s second exception is so far allowed; and the plaintiff’s third exception is disallowed.
 

 Also, since the defendant has been charged by the master the highest prices, and the plaintiff has kept back the accounts of sales upon which the agreement- for compensation of the factor, at least as to the rate, would probably appear, we think the master did right in allowing Ferrand a commission. Consequently, the-plaintiff’s fourth and last exception is likewise over ruled. Master allowed $20 for report: Defendant to pay the costs.of suit.
 

 Per Curiam. Decree accordingly..